# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JUANA VILLEGAS, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-0219 |
| | ) | |
| THE METROPOLITAN GOVERNMENT | ) | Judge Haynes |
| OF DAVIDSON COUNTY/NASHVILLE -- | ) | |
| DAVIDSON COUNTY SHERIFF'S | ) | JURY DEMAND |
| OFFICE, et al., | ) | |
| | ) | |
|    Defendant. | ) | |

## JOINT PROPOSED JURY INSTRUCTIONS

Plaintiff Juana Villegas and the Metropolitan Government of Nashville and Davidson County respectfully submit these proposed jury instructions, which appear after the signatures and certificate of service. Given the Court's standard instructions in jury trials, these instructions address the substantive areas of the law only. Where the parties were unable to agree on the instruction or even the necessity for the instruction, they will provide competing alternatives.

Based on the pending motions in *limine* before the Court, the parties request the right to propose additional or alternate instructions as warranted. An electronic copy of these instructions is available for the Court.

Respectfully Submitted,

*/s/ John L. Farringer IV*
William L. Harbison (No. 7012)
Phillip F. Cramer (No. 20697)
John L. Farringer IV (No. 22783)
SHERRARD & ROE, PLC
424 Church Street, Suite 2000
Nashville, TN 37219
(615) 742-4200
bharbison@sherrardroe.com

pcramer@sherrardroe.com
jfarringer@sherrardroe.com

Elliott Ozment (No. 4331)
IMMIGRATION LAW OFFICES OF
ELLIOT OZMENT
1214 Murfreesboro Pike
Nashville, TN 37217
(615) 321-8888
elliott@ozmentlaw.com

*Attorneys for Juana Villegas*


*/s/ Allison L. Bussell w/p JLF*
Kevin C. Klein (No. 23301)
Allison L. Bussell (No. 23538)
METROPOLITAN DEPARTMENT OF LAW
SUE B. CAIN, DIRECTOR OF LAW
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, TN 37219
(615) 862-6341
kevin.klein@nashville.gov
allison.bussell@nashville.gov

*Attorneys for the Metropolitan Government*


**CERTIFICATE OF SERVICE**

Service of the foregoing was accomplished through the Court's Electronic Filing System on this 9th day of August, 2011, upon the following:

Kevin Klein
Allison Bussell
Metropolitan Department of Law
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, TN 37219
Kevin.Klein@nashville.gov
Allison.Bussell@nashville.gov

*/s/ John L. Farringer IV*

# THE UNDISPUTED FACTS

*The Parties dispute the need for this instruction.*

*Ms. Villegas believes the instruction is necessary to provide the jury with the facts already found by the Court, particularly because Metro refused to stipulate to them even though they are facts directly quoted from this Court's memorandum decision, which is the law of the case. Ms. Villegas submits that simply providing the jury with the parties' Joint Stipulations alone at the outset of the trial fails to adequately inform the jury and will result in the needless waste of judicial and litigant time to provide evidence of undisputed facts as found by the Court.*

*Metro contends that this instruction is unnecessary, and juries are generally not instructed on facts, beyond a general description of each party's theory. Metro would request, therefore, that the agreed-upon Stipulations be read to the jury at the beginning of trial, along with an instruction that those facts are not in dispute. Further discussion of the facts is more appropriately reserved for closing arguments. If the Court concludes that Stipulations of fact are appropriately included in the jury instructions, Metro requests that only the parties' Joint Stipulations be included. Plaintiff's version below contains a number of facts that are irrelevant and intended only to inflame the jury.*

<u>Ms. Villegas' Proposed Instruction</u>

The following facts are undisputed or have already been decided by previous order of this Court:

- "On July 3, 2008, Tim Coleman, a Berry Hill, Tennessee police office arrested Plaintiff, Juana Villegas, who was nine months pregnant, for driving without a valid license." (Mem. Op. [DE 119] at 3)

- "DCSO accepts and houses individuals arrested by local law enforcement agencies without inquiry into whether the arrest was proper." (Mem. Op. [DE 119] at 3)

- "From July 3rd until July 5th 2008, Plaintiff was held in the Davidson County jail. Because July 4th was a holiday, Davidson County courts did not meet that day. On the evening of July 5th, Plaintiff was confined at the Correctional Development Center, a female correctional facility on Harding Place in Nashville." (Mem. Op. [DE 119] at 3)

- "On July 5th, Plaintiff informed Richard Ramsey, a male jail guard that her "water," i.e., amniotic fluid "broke" and "that she was having labor pains."" (Mem. Op. [DE 119] at 4)

- "Plaintiff told the officer who was at her cell to distribute food "my baby is coming." DCSO's jail incident report reflects that Plaintiffs water actually broke at 9:00 p.m. In any event, jail guards transported Plaintiff to the jail infirmary where a nurse

confirmed that Plaintiffs water had broken and summoned an ambulance." (Mem. Op. [DE 119] at 4)

- "Plaintiff was placed on a stretcher and transported to Metro General Hospital ("MGH") with her wrists restrained in front of her body and her legs restrained together. Lt. Kristina Quintal, a jail supervisor sent two male officers to transport Plaintiff. In route to the hospital, Matthew Barshaw, a DCSO officer asked Lt. Quintal if Plaintiff needed to be shackled because "what's going through my head now is what if all of a sudden the baby started -- took more time to unrestrain these restraints in the back of the ambulance." Plaintiff testified that she was in pain, from contractions during this time." (Mem. Op. [DE 119] at 5)

- "When Plaintiff arrived in her hospital room at MGH, she remained shackled until her transfer to the hospital bed from the ambulance stretcher." (Mem. Op. [DE 119] at 5)

- "Nurses requested a jail officer to remove Plaintiffs handcuffs to change Plaintiff into a hospital gown. Plaintiff was unshackled and Barshaw and Farragher, a fellow male officer, remained in Plaintiff's room, but turned their backs to Plaintiff, as the nurses and a doctor requested. A doctor requested that the officers turn their backs while she examined Plaintiff's lower extremities. Once in her hospital gown, officers Farragher and/or Bradshaw again restrained Plaintiff's hands and legs while she was in the hospital bed." (Mem. Op. [DE 119] at 5)

- "Brandi Moore, a corporal in DCSO's transportation division, relieved Officers Faragher and Barshaw very shortly after Plaintiff's arrival at MGH." (Mem. Op. [DE 119] at 6)

- "Moore removed the handcuffs from Plaintiff, but restrained one of Plaintiff's legs to the hospital bed. According to Moore, she overheard MGH medical staff talking to a doctor about a "No Restraint Order," but the doctor did not respond. A nurse, however, commented that the officers "shouldn't put leg irons on her" and Moore described the nurse as "rude." A nurse described to jail officers the high risk of blood clots after giving birth, if the shackles were not removed. According to Plaintiff's hospital records, at 11:20 p.m. on July 5, 2008, Dr. Kesha Robertson signed a physician's order stating: "Please remove shackles" and this Order was placed in Plaintiff's hospital file. Moore did not see a "No Restraint Order" but the next day Officer Flatt told her of the "No Restraint Order." (Mem. Op. [DE 119] at 6-7).

- "David Peralta, another DCSO officer, relieved Moore at 11:00 p.m. on July 5th and Moore told Peralta to be prepared for a "no restraint order." Shortly after 11:00 p.m., Peralta removed Plaintiff's restraints. Plaintiff gave birth to her child at approximately 1:00 a.m. on July 6, 2008. Plaintiff remained unrestrained during Peralta's shift, but Peralta shackled Plaintiff just minutes before his shift change at 7:00 a.m., because of DCSO policy. Peralta restrained one of Plaintiff's ankles to the bed after Plaintiff opted for the ankle restraint in lieu of a wrist restraint." (Mem. Op. [DE 119] at 7)

- "When Moore returned on July 6th, Officer Flatt informed her that a No Restraint Order was in effect, but Sergeant Harrison, her supervisor ordered Moore to "put restraints" on Plaintiff."  (Mem. Op. [DE 119] at 7)

- "Plaintiff had no prior criminal history or prior arrest or flight risk and had not been engaged in any conduct to pose a danger to the community or to anyone.  While Plaintiff was in labor or post-partum recovery, the medical testimony of Dr. Sandra Torrente and the commendable conduct of Officer Peralta clearly establish the Plaintiff was neither a risk of flight nor a danger to anyone."  (Mem. Op. [DE 119] at 34)

- "During her post-partum recovery, one of Plaintiff's legs was shackled to her hospital bed.  Yet, whenever Plaintiff went to the restroom or walked or bathed during her post-partum recovery, both of Plaintiff's legs were restrained."  (Mem. Op. [DE 119] at 7.

- "At the time of Plaintiff's discharge from MGH…DCSO officials did not allow Plaintiff to be transported to the DCSO jail leave with a breast pump that the hospital staff provided."  (Mem. Op. [DE 119] at 8)

# COURT'S LIABILITY DETERMINATION

*The Parties agree that the Court should include an instruction regarding the Court's liability determination. However, they were unable to agree on the wording of that instruction.*

<u>Ms. Villegas's Proposed Instruction</u>

After carefully reviewing the evidence and the applicable law, I determined that the Defendant violated Ms. Villegas' constitutional due process rights by shackling her during the final active stages of her labor and post partum recovery. I also determined that the Defendant showed deliberate indifference to her serious medical needs and violated the Eighth Amendment's standard of contemporary decency. Specifically, I ruled as follows:

- "The Court applie[d] [the holdings and rationales of prior judicial cases] and the undisputed facts to conclude that Defendants' shackling of Plaintiff during the final stages of her active labor and her post-partum recovery, violated the Due Process Clause of the Fourteenth Amendment, given Plaintiff's serious medical condition and the Defendants' indifference to that condition by shackling her during these time periods." (Mem. Opp. [DE 119] at 34-35)

- "[I]n addition to the [prior] judicial decisions, this Court further conclude[d] that [numerous] medical publications, convention rules, social studies and standards also establish that the shackling of a pregnant detainee in the final stages of labor shortly before birth and during the post-partum recovery, violates the Eighth Amendment's standard of contemporary decency." (Mem. Op. [DE 119] at 40)

- "The medical proof demonstrates that such shackling was not medically necessary and caused unnecessary physical and mental suffering." (Mem. Op. [DE 119] at 35)

- "In addition….the Court concludes that Defendants' denial of the breast pump that the [hospital] provided for Plaintiff's medical care also constitutes deliberate indifference under the Eighth and Fourteenth Amendments as the denial and interference with care prescribed by a health care provider." (Mem. Op. [DE 119] at 35)

In short, I have already determined that the Defendant is liable for violating Ms. Villegas' constitutional rights. Under the statute of Section 1983, Ms. Villegas is now entitled to any damages that are caused by those violations, and it is for you, the jury, to determine that amount.

549603.6  08294-001

5

Case 3:09-cv-00219   Document 160   Filed 08/09/11   Page 6 of 16 PageID #: 3463

Metro's Proposed Two-Part Instruction

**PLAINTIFF'S CLAIMS AND THE COURT'S LIABILITY DETERMINATION**

"Plaintiff's claim for denial of medical care arises from Defendants' shackling during her active pre-birth labor (when her "water broke") and during her post-partum recovery and is predicated on the Due Process Clause of the Fourteenth Amendment because Plaintiff was a detainee, not a convicted prisoner." (Memo. Op. at 27-28)

"The Court . . . conclude[d] that Defendants' shackling of Plaintiff during the final stages of her active labor and her post-partum recovery, violated the Due Process Clause of the Fourteenth Amendment . . . ." (*Id.* at 34-35.)

"In addition [citation omitted], the Court conclude[d] that Defendants' denial of the breast pump that the MGH provided for Plaintiff's medical care also constitutes deliberate indifference under the Eighth and Fourteenth Amendments . . . ." (*Id.* at 35.)

"For these collective reasons, the Court conclude[d] that the Plaintiff's motion for partial summary judgment should be granted on her Fourteenth Amendment claim for the Defendants' shackling of her during Plaintiff's active final stages of labor and subsequent postpartum recovery and denial of breast pump." (*Id.* at 42.)

Plaintiff presented additional claims; however, the Court granted Defendant's motion for summary judgment as to those additional claims, and the additional claims were dismissed.

**INSTRUCTION REGARDING THE COURT'S LIABILITY DETERMINATION**

Because of the Court's ruling, you will not be asked to decide whether Ms. Villegas has a valid claim for violation of her constitutional rights. Rather, this trial will decide solely whether Ms. Villegas suffered any compensable damages as a result of the Sheriff's Office's actions and, if so, the amount of those damages. The fact that the Court found a constitutional violation does

not mean that Ms. Villegas has suffered any compensable injuries.  In other words, your sole job in this trial is to decide whether Ms. Villegas suffered any compensable damages, and, if so, place a dollar figure on those damages.

## DAMAGES – GENERALLY

I am now going to instruct you on damages. I have already found the Defendant liable for violating Ms. Villegas' civil rights through the "shackling of Plaintiff during the final stages of her active labor and her post-partum recovery . . . ." In addition, I found "that Defendants' denial of the breast pump that [Nashville General Hospital] provided for Plaintiff's medical care" violated her civil rights. While Ms. Villegas is entitled to an award of damages under Section 1983 for these federal constitutional violations, you must decide whether she is entitled to compensatory damages or nominal damages.

> [*If the Court grants Ms. Villegas' motion in limine #1, then the instruction would continue*: You are not to presume or consider Ms. Villegas' nationality, her immigration status, or her background. Ms. Villegas is entitled to the same amount of damages as if she were a United States Citizen, a naturalized citizen, a citizen of a foreign country visiting the United States, a foreign citizen working pursuant to a work permit, or a foreign citizen lacking proper documentation. This instruction is not meant to inform you in any way of Ms. Villegas' background or to infer any information regarding her nationality or immigration status, as it is not relevant to your decision.]

> [*If the Court denies Ms. Villegas' motion in limine #1, then the instruction would continue:* Ms. Villegas is entitled to the same amount of damages as if she were a United States Citizen, a naturalized citizen, a citizen of a foreign country visiting the United States, a foreign citizen working pursuant to a work permit, or a foreign citizen lacking proper documentation. In other words, you may not deny her damages that you believe she is entitled to merely because she is not a citizen of the United States. You may consider Ms. Villegas's immigration status only to the extent that certain injuries she may claim were caused by her immigration status, in which case you should distinguish

between injuries caused by the Defendant's conduct and those caused by other sources. However, you may not deny her damages to which she is otherwise entitled merely because of her immigration status.]

**COMPENSATORY DAMAGES**

You must award Ms. Villegas an amount that will fairly compensate her for any injury, physical or emotional, that she actually sustained as a result of the Defendant's conduct. These damages are called compensatory damages. The purpose of compensatory damages is to make a party whole – that is, to compensate a party for the damage that it has suffered. You may award compensatory damages only for injuries that Ms. Villegas proves by a preponderance of the evidence were caused by the conduct that this Court already found to be wrongful.

[*Metro has requested that the following sentence be included to specifically address causation, which is opposed by Ms. Villegas because she believes that it suggests that a partial and/or non-proximate additional cause of damages negates recovery for those damages, not to mention the fact that the jury is instructed above only to award compensatory damages for injuries caused by Defendant's wrongful conduct such that the additional language below (particularly the "in part" phrase) is confusing and misleading:*

By extension, if you conclude that Ms. Villegas's claimed physical or emotional harm was caused in part or in full by something other than shackling and denial of a breast pump, you may not award damages for that portion of the harm.

*Metro contends that this instruction is necessary to prevent the jury from awarding damages for physical or emotional injuries that were not caused by Metro at all. The jury may not award Plaintiff damages caused by her arrest, for example. See* Wooler v. Hickman County, Kentucky, *5:05CV-247-R, 2008 WL 5412826 (W.D. Ky. Dec. 30, 2008) (citing* Memphis Community Sch. Dist. v. Stachura, *477 U.S. 299, 309 (1986);* Carey v. Piphus, *435 U.S. 247, 264 (1978)), aff'd sub* nom., 377 Fed. App. 502 (6th Cir. 2010)]

Additionally, you should not award damages based on the abstract value of a constitutional right but rather on actual damages or future damages that were caused by the Defendant.

Moreover, in order to recover damages under Section 1983, neither the conduct nor the injuries need to be extreme, outrageous, or severe. If there is any harm shown, then the award should be proportionate to that harm. Compensatory damages must not be based on speculation or sympathy. You may only award damages for those injuries which a party has actually suffered or is reasonably likely to suffer in the future.

Under Section 1983, the Plaintiff may recover for physical injury, emotional or mental injury, as well as future medical care and expenses. Damages for emotional and mental distress will not be presumed, and must be proven by "competent evidence." Therefore, expert medical advice is not required to prove emotional distress in Section 1983 cases, but the plaintiff must present competent evidence showing emotional distress. This may be proven by lay testimony, including testimony from the Plaintiff herself.

For future medical expenses, you must compensate the Plaintiff for loss or harm that is reasonably certain to be suffered in the future as a result of the injury in question. You may not include speculative damages, which is compensation for future loss or harm that, although possible, is conjectural or not reasonably certain.

Each of these elements of damages is separate. But you may not duplicate damages for any element by also including that same loss or harm in another element of damage.

All of the damages must be based on the evidence presented at trial, and only on that evidence. The Plaintiff has the burden of proving compensatory damages by a preponderance of the evidence. The law does not require that a party prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances

549603.6  08294-001                                5
Case 3:09-cv-00219  Document 160  Filed 08/09/11  Page 12 of 16 PageID #: 3469

permit. You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence. It is for you, the jury, equipped with your collective wisdom and experience, to determine the amount of compensation.

# NOMINAL DAMAGES

*The parties disagree as to the necessity and applicability of an instruction regarding the damages claimed by Plaintiff.*

*Ms. Villegas' position is that, by virtue of the Court already having found liability, the Court has already held that she is entitled to at least nominal damages, which the instructions earlier inform the jury to award and therefore do not need separate repetition.*

*Metro contends, on the other hand, that not including an instruction on nominal damages (and a line in the verdict form) will confuse the jury and lead it to believe that it must award compensatory damages in this case. Based on the Court's ruling, Plaintiff is entitled to one or the other, which she does not dispute. In the interest of completeness, the jury should, therefore, be presented with both options. The fact that the Court has already found liability is not grounds for departing from the standard instruction and verdict form interrogatory regarding nominal damages.*

Ms. Villegas' Proposed Instruction

    None

Metro's Proposed Instruction

    If you conclude that Ms. Villegas has not proved that she is entitled to compensatory damages, you must award her nominal damages in the amount of one dollar ($1.00).

# PLAINTIFF'S DAMAGE CLAIMS

*The parties disagree as to the necessity and applicability of an instruction regarding the damages claimed by Plaintiff.*

*Ms. Villegas believes that the level of detail is appropriate and fully informs the jury as to the damages being sought.*

*Metro contends that the level of detail in this instruction is more appropriately reserved for closing argument. In fact, this is not an instruction at all; it is a request. And by calling it an instruction, the jury may be misled into awarding damages in each category simply because there was a designation for each (which Plaintiff also provides on the verdict form). Alternatively, Metro would not oppose a brief description of the parties' "theories" to be read in pre-trial instructions, in which Plaintiff may elect to include this information. But it should be designated a "theory," not an instruction.*

<u>Ms. Villegas' Proposed Instruction</u>

In this case, Plaintiff has made claims for the following items of damages:

(1) Physical pain from shackling, handcuffing and failing to provide necessary medical equipment during labor, post-partum recovery, in the detention center, and continuing to this day and into the future;

(2) Emotional and mental distress, pain, and/or suffering based on the shackling and denial of breast pump, including that resulting from fear for herself, fear for her child, fear of the unknown, and the entirety of the situation during labor, childbirth, post-partum recovery, in the detention center, and continuing to this day and into the future;

(3) Psychological damages and emotional and mental distress, pain, and/or suffering, including that arising from or related to the physical and emotional damages discussed above, her treatment by the Sheriff's Office while in custody, and the risk of death and serious injury Ms. Villegas faced at the hands of the Sheriff's Office; and

5

(4) Monetary expenses for future treatment and care (psychological, psychiatric, and medical), including but not limited to doctor's visits, therapy sessions, psychiatric care, inpatient care, tests, psychical therapy, evaluations and prescription drugs.

I provide this information to you not to suggest what damages you should award, but rather to remind you of the claims asserted by Plaintiff.

Metro's Proposed Instruction

None