IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JUANA VILLEGAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-0219 |
| | ) | |
| THE METROPOLITAN GOVERNMENT | ) | Judge Haynes |
| OF DAVIDSON COUNTY/NASHVILLE -- | ) | |
| DAVIDSON COUNTY SHERIFF'S | ) | JURY DEMAND |
| OFFICE, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S PRE-TRIAL BRIEF ON RECOVERABLE DAMAGES**

Pursuant to the Court's Order Setting Hearing on Damages [DE #120], Plaintiff Juana Villegas respectfully submits this pre-trial brief on the damages that are recoverable from the Metropolitan Government of Davidson County—Davidson County Sheriff's Office ("Metro" or "DCSO").

**I.      Introduction.**

Ms. Villegas filed suit claiming a violation of her rights under the Due Process Clause of the Fourteenth Amendment for the deliberate indifference to her medical needs arising from the shackling during labor and post partum recovery.[1] (Memo. Op. [Doc. 119-1] at 42.) Ms. Villegas seeks the following compensatory damages:

---

[1] Plaintiff also asserted a violation of her First Amendment right to familial association, her Fourth Amendment right of personal privacy, a breach of contract claim with the Immigration and Customs Enforcement, and violations of her rights under the Tennessee Constitution. Plaintiff did not prevail on summary judgment for the First Amendment or Fourth Amendment claim. The breach of contract claim was dismissed without prejudice for lack of subject matter jurisdiction. The state constitutional claims were also dismissed without prejudice. (Memo. Op. [Doc. 119-1] at 42.)

> (1) Physical pain from shackling, handcuffing and failing to provide necessary medical equipment during labor, post-partum recovery, in the detention center, and continuing to this day and into the future;
>
> (2) Emotional and mental distress, pain, and/or suffering based on the shackling and denial of breast pump, including that resulting from fear for herself, fear for her child, fear of the unknown, and the entirety of the situation during labor, childbirth, post-partum recovery, in the detention center, and continuing to this day and into the future;
>
> (3) Psychological damages and emotional and mental distress, pain, and/or suffering, including that arising from or related to the physical and emotional damages discussed above, her treatment by the Sheriff's Office while in custody, and the risk of death and serious injury Ms. Villegas faced at the hands of the Sheriff's Office; and
>
> (4) Monetary expenses for future treatment and care, including but not limited to doctor's visits, therapy sessions, psychiatric care, inpatient care, tests, psychical therapy, evaluations and prescription drugs.

(Villegas' Supplemental Responses at Interrogatory No. 15.) Through motions after the conclusion of the trial on damages, Ms. Villegas will seek recovery of her reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 and any appropriate equitable, injunctive or other non-monetary relief.

The factual and procedural background has been briefed previously and is discussed at length in the Court's Memorandum Opinion, which found that Metro violated Ms. Villegas' rights under 42 U.S.C. § 1983 by shackling her while she was in labor and post-partum recovery and by denying her medically-necessary equipment upon discharge from the hospital. (Memo. Op. [Doc. 119-1] at 42.) Accordingly, this brief will address only the damages resulting from Metro's actions that Ms. Villegas seeks at trial. First, the brief discusses relevant statutory and

case law supporting her damages claims. Second, the brief outlines the fact and expert testimony supporting Ms. Villegas' damages claims.

**III.  Law Supporting Ms. Villegas' Damages Claims.**

The legal precedent is well-established for each of the categories of damages that Ms. Villegas seeks based on Metro's violation of her constitutional rights.[2]

A.  <u>General Law on Damages under § 1983</u>.

The Court has already determined that Metro violated Ms. Villegas' constitutional rights and is liable to her. Thus, at the very least, Ms. Villegas must be given nominal damages even without any proof of actual damages. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1352 (6th Cir. 1992).

The basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights. *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (internal citations and marks omitted). In order to recover from Metro for her damages, Ms. Villegas must demonstrate that they were proximately caused by Metro's violation of her constitutional rights. *See Horn by Parks v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 659 (6th Cir. 1994).

Section 1983 creates "a species of tort liability" in favor of persons who are deprived of their constitutional rights. *Stachura*, 477 U.S. at 305-06. The level of damages, therefore, is ordinarily determined according to principles arrived from the common law of torts. *Id.* at 306. Courts, however, should "not try to fit a constitutional claim into a Procrustean bed of common

---

[2] Certain specific legal principles relevant to damages are also set forth in Ms. Villegas' motions in *limine* and response to Metro's motions in *limine*. [DE #121-127, 139-143, 151.] That legal precedent is incorporated herein by reference and, in the interest of efficiency and respect for the Court's time, will not be restated herein.

549197.7  08294-001

3

law tort." *Chatman v. Slagle,* 107 F.3d 380, 384 (6th Cir. 1997).[3] The severity of the harm should govern the amount, not the availability of recovery. *Id.* at 385. If there is any harm shown, then the award should be proportionate to that harm. *Id.*

Moreover, in order to recover damages under § 1983, neither the conduct nor the injuries need to be extreme or outrageous. *Id.* at 384. Courts have consistently upheld awards for mental suffering, emotional distress and anguish in § 1983 cases without requiring that the pain be "severe." *Id.* at 384-85 (*citing Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir. 1994); *Bolden v. Southeastern Penn. Transp. Auth*, 21 F.3d 29 (3d Cir. 1994)). As the Eighth Circuit opined in *Rowe v. Hussman Corp.,* 381 F.3d 775, 783 (8th Cir. 2004): "It was for the jury, equipped as it was with the collective wisdom that life's experiences confer, to determine the amount that would adequately compensate [plaintiff] for that injury."

B. <u>Emotional and Mental Damages</u>.

It is well-established that compensatory damages recoverable for a § 1983 claim may include not only out-of–pocket loss and other monetary harm, but also such injuries as "impairment of reputation, personal humiliation, mental anguish and suffering." *Stachura,* 477 U.S. at 307 (*quoting Gertz v. Robert Welch*, *Inc.,* 418 U.S. 323 (1974)); *see also Carey v. Piphus,* 435 U.S. at 264.

The Sixth Circuit has a consistent and developed history of upholding damage awards not only for physical injuries, but also for emotional distress such as mental anguish, humiliation, loss of reputation, and psychological injuries. *See, e.g., Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994) (upholding award for "mental anguish, humiliation, and loss of reputation"); *Holmes v. Donovan,* 984 F.2d 732, 739 (6th Cir. 1993) ("Damages for emotional

---

[3] For example, the heightened standards for a tort claim for intentional infliction of emotional distress should not govern recovery in a § 1983 case. *Id.* at 385.

distress may be awarded upon a showing of intimidation, marital problems, weight loss, loss of sleep, shock, or humiliation."); *Glasson v. City of Louisville*, 518 F.2d 899, 903, 912 (6th Cir. 1975) (reversing the district court's judgment for the police officers and holding that a plaintiff could recover for emotional distress based on her testimony that she was shocked and frightened by a police officer's conduct at a protest and that since the incident she "ha[d] been fearful of participating in any other demonstrations").

Damages for emotional and mental distress need only be proven by "competent evidence." *Carey*, 435 U.S. at 264, n. 20; *Rodgers v. Fisher Body Div., General Motors Corp.*, 739 F.2d 1102, 1108 (6th Cir. 1984).

Further, like with physical injuries, the law does not require expert testimony to prove emotional damages under § 1983. Rather, appropriate and competent testimony may come from the plaintiff herself or family members and friends. *See Carey*, 435 U.S. at 264 n.20 (noting that genuine injury in this respect may be evidenced by one's conduct and observed by others); *see also Meyers v. City of Cincinnati,* 14 F.3d 1115, 1119 (6th Cir. 1994); *Moody v. Pepsi-Cola Metro. Bottling Co.,* 915 F.2d 201, 210 (6th Cir. 1990); *Currie v. Haywood County,* No. 03-1052-T/AN, 2006 WL 840427, at *7-8 (W.D. Tenn. Mar. 30, 2006).

C. <u>Future Medical Treatment</u>.

Because damages under § 1983 are governed by general tort law principles, recovery for future medical treatment, either for physical or emotional injury or both, is appropriate. *See Imbler v. Pachtman,* 424 U.S. 409, 418 (1976); *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 388 (6th Cir. 2008); *Combs v. Holman,* 134 Fed. Appx. 669, 670-71 (5th Cir. 2005); *Rowe v. Hussmann Corp.,* 381 F.3d at 783 (8th Cir. 2004). Future medical expenses may be awarded when there exists a degree of medical certainty that future medical expenses will be necessary.

*Doe v. City of Waterbury*, 2009 WL 3348314, at *2 (D. Conn. Oct. 15, 2009). Awards of future medical expenses for psychological problems, such as PTSD, may be appropriate. *See Park v. Shiflett*, 250 F.3d 843, 854 (4th Cir. 2001); *Blackburn v. Snow*, 771 F.2d 556, 571-72 (1st Cir. 1985). Additionally, a plaintiff may seek as damages the cost of future medical treatment even if she has not sought such treatment since the relevant event. *See Brandon v. Village of Maywood*, 179 F. Supp.2d 847, 861 (N.D. Ill. 2001).

D. Post-Trial Award of Attorneys' Fees and Expenses and Any Equitable or Injunctive Relief.

Because the Court found that Metro was liable to Ms. Villegas for violating her constitutional rights, Ms. Villegas is entitled to seek recovery of her attorneys' fees and expenses pursuant to 42 U.S.C. § 1988. In accordance with the Court's Order Setting Hearing on Damages [DE #120], Ms. Villegas will separately brief and demonstrate her attorneys' fees and costs within thirty (30) days after entry of the final judgment after the trial. If there is equitable, injunctive or other non-monetary relief appropriate after the jury verdict, such will be separately briefed as well.

**IV. The Fact and Expert Testimony Proves Ms. Villegas is Entitled to Recover Significant Damages.**

A. Factual Proof on Recoverable Damages.

The evidence of Ms. Villegas' damages caused by Metro's violation of her constitutional rights is overwhelming. The Court already has determined that Ms. Villegas was shackled during the active final stages of her labor and her post-partum recovery and that Metro demonstrated deliberate indifference to her medical needs by denying her access to a breast pump after she gave birth. The record demonstrates that the physical pain and suffering and emotional, mental and psychological anguish of being shackled and denied a breast pump are

directly related to Metro's unconstitutional actions and easily established by both fact and expert testimony.

As discussed in the next section, the expert testimony will establish that she suffers from numerous ailments. The experts have spent extensive time examining the record in this case, meeting with the Plaintiff, and speaking to her closest family and friends. This expert testimony will describe in detail the "actual injury" required under § 1983 and consistent with tort law. In contrast, the only expert offered by Metro to address Ms. Villegas damages, Mr. Barth, did not examine Ms. Villegas and has never even met her.

Recognizing that testimony in these cases often comes from the plaintiff herself or family members and friends, Ms. Villegas will also offer testimony from Ms. Villegas as well as others. This testimony will further substantiate Ms. Villegas' physical, emotional, mental and psychological trauma resulting from the shackling experience as well as the lasting effect on her very way of life. As one of Ms. Villegas' friends stated to Dr. Jill DeBona, "I never saw Juana cry until after what happened. She cries a lot now. Seldom laughs. She is not what she was before. Took a toll on her. . . . Juana will never get over this. As a woman, she feels as if she were raped. Feels violated." (DeBona at 18 [Doc. 94-3 at PageID#: 1842]).

The factual findings of the Court in its Memorandum Opinion largely set forth the factual testimony, stipulations and documentary evidence that supports Ms. Villegas' damages. (Memo. Op. [Doc 119-1]; *see* Complaint [DE #1].) Those facts are incorporated herein by reference and will not be repeated out of respect for the Court's time. In the face of this proof, Metro will not offer a single fact witness disputing Ms. Villegas' injuries and damages or the cause of such injuries.

Ms. Villegas experienced physical pain and discomfort while shackled and, in particular, after she was denied a breast pump. She continues to suffer from problems with her back when sleeping and sitting to this day. More devastating was the emotional and psychological trauma of her shackling that caused fear, humiliation and other troubling emotions. She continues to experience flashbacks to the days of her shackling and the resulting problems have affected her ability to be a mother and wife, limited the extent to which she is able to interact socially, and generally sapped her of happiness. Ms. Villegas' family, friends and coworkers have all witnessed her dramatic decline after the shackling ordeal.

All of this injury was directly caused by Metro's unconstitutional decision to shackle Ms. Villegas during childbirth and to deny her a medically-necessary breast pump. Metro, therefore, is liable to Ms. Villegas for pain and suffering, emotional distress, and the future costs of her required treatment.

>B. <u>Expert Proof on Recoverable Damages</u>.

>*(1)* *Ms. Villegas Is Entitled to Compensatory Damages for Physical Injuries and Pain and Suffering Caused by Her Shackling and Metro's Refusal to Allow Her Access to a Breast Pump.*

One of Plaintiff's experts, Dr. Sandra Torrente, concludes that the shackling of a woman who is in her third trimester and whose water has broken is extremely dangerous because of the likelihood that a baby could not be born while the mother's legs are shackled together. Dr. Torrente discusses other risks as well, including the potential for umbilical prolapse, a reduced ability to provide emergency medical care, a potential for the development of a life-threatening blood clot, and a risk of falling due to already-impaired balance. (Torrente at 19-23 [Doc. 94-4 at PageID#: 1879-83].) Dr. Torrente states that a woman who is in active labor would not, from a medical point of view, pose a physical flight risk due to her condition. (*Id.* at 25 [PageID#:

1885].) She further writes, "DCSO denied Ms. Villegas the proper medical care when Ms. Villegas was shackled and when DCSO refused to remove her shackles even after being requested to do so by her health care providers." (*Id.* at 32 [PageID#: 1892].)

Dr. Jill DeBona, the Plaintiff's psychiatric expert, states that Ms. Villegas' sleep is also disrupted due to chronic back plain she sustained after the shackling. (DeBona at 26 [Doc. 94-3 at PageID#: 1850].) Dr. DeBona recommends an evaluation by an orthopedist or neurosurgeon for evaluation and treatment. (*Id.* at 30 [PageID#: 1854].)

In regard to the denial of the breast pump, Dr. Torrente states that failure to use a pump in a consistent manner can cause breast engorgement, mastitis, and can decrease the length of time that a mother will produce milk for her child. (Torrente at 26-28 [Doc. 94-4 at PageID#: 1886-88].) Dr. Torrente concludes: "The development of mastitis by Ms. Villegas was almost certainly caused by her inability to use a breast pump in the hours and days following her release from General Hospital." (*Id.* at 29 [PageID#: 1889].)[4]

*(2) Ms. Villegas Is Entitled to Compensatory Damages for the Emotional and Mental Distress Caused by Metro's Violation of Her Fourteenth Amendment Rights.*

Dr. DeBona interviewed Ms. Villegas for more than six hours in a span of three sessions. (DeBona at 1 [Doc. 94-3 at PageID#: 1825]). She also interviewed Ms. Villegas' husband, friend, sister and boss. (*Id.*) These interviews and the rest of Dr. DeBona's evaluation of Ms. Villegas was conducted pursuant to accepted medical guidelines and consistent with her experience diagnosing and treating at least 100 cases of Post Traumatic Stress Disorder and other

---

[4] Dr. Torrente also notes that moisturizers were medically necessary in order to ensure breast health and prevent sores and ulcerations. (*Id.*) She writes, "In my opinion, the breast soreness and pain that Ms. Villegas describes is consistent with a failure to apply lanolin cream to her breasts following birth. It is my opinion that this soreness and discomfort, which is connected to a lack of moisturizer, could have been relieved if Ms. Villegas had been allowed to return to the detention center with the moisturizer provided by the hospital and been allowed to apply the cream regularly." (*Id.*) Further, Dr. Torrente adds that failure to provide a woman who had just given birth access to Motrin falls below the professional standard of care in obstetrics. (*Id.*) She explains that the contracting of the uterus causes a woman to experience pain throughout the 28-day postpartum period. (*Id.* at 30 [PageID#: 1890].)

549197.7  08294-001

similar issues. This medical evaluation stands in stark contrast to Metro's proffered expert, Mr. Barth, who is not a medical doctor, never interviewed or even met Ms. Villegas, and basis his critique solely on a review of certain records.[5]

After her thorough medical evaluation, Dr. DeBona diagnosed Ms. Villegas with chronic Post Traumatic Stress Disorder ("PTSD"), Major Depressive Disorder, and Phobia. (*Id.* at 20-21 [PageID#: 1844-45].) She concludes: "Ms. Villegas's self concept is that she is a mother, a worker, a wife, not a criminal. . . Her core sense of self, as a human being with value, has been shaken." (*Id.* at 22 [PageID#: 1846].)

Dr. DeBona describes Ms. Villegas' recurrent recollections of the shackling experience. (*Id.* at 23 [PageID#: 1847].) Her interviews revealed that when Ms. Villegas sees her youngest son (the one born during the shackling ordeal), painful memories are triggered. (*Id.*) Similarly, when she sees a police vehicle, it triggers intensely painful and frightening memories, causing emotional distress accompanied by physical reactions such as heart palpitations, hot and cold sweats, and trembling of her body. (*Id.*)

Dr. DeBona also observes that Ms. Villegas now avoids visiting with friends, socializing, or chatting on the phone. (*Id.*) She feels alienated, disconnected and is emotionally numb. (*Id.* at 23-24 [PageID#: 1847-48].) She has chronic sleep difficulties, has diminished interest in sexual intimacy, is easily distracted and often inattentive. (*Id.*) She has nightmares, anxiety, and her relationships with her husband and children have suffered. (*Id.* at 24 [PageID#: 1848].) Dr. DeBona also states that Ms. Villegas suffers from depression. (*Id.* at 25 [PageID#: 1849].) She states, "She is sad every day . . . During these times, she will stay at home and cry throughout the day." (*Id.*)

---

[5] Accordingly, Ms. Villegas has filed a motion in *limine* to exclude Mr. Barth as an expert witness. [DE #121, 123.] At the time of filing this brief, the Court has not yet ruled upon the pending motions in *limine*.

549197.7 08294-001

With respect to Ms. Villegas' psychological and mental diagnoses, Metro attempts to dispute whether she suffers from PTSD, Major Depressive Disorder, and Phobia. If the jury finds that Ms. Villegas does suffer from these ailments, then Metro does not offer any expert testimony suggesting an alternative cause <u>for these diagnoses</u>. While Metro claims that Ms. Villegas "worries" about potential deportation, Metro's own expert, Mr. Barth, never opines that such worries could medically cause PTSD.

In any event, Dr. DeBona (unlike Mr. Barth) is a licensed medical doctor who (unlike Mr. Barth) personally met with Ms. Villegas to evaluate her and arrive at her medical diagnoses. Dr. DeBona's testimony is compelling and establishes that Ms. Villegas has suffered significant damages as a direct result of her shackling at the hands of Metro. Dr. DeBona's description of the stark contrast between a happy, even-tempered, social woman to an emotionally numb woman who has lost her very sense of self, provides "competent evidence" to illustrate the causal link between the defendant's actions and the harm. Additional testimony on this issue—along with additional details and facts regarding Ms. Villegas' damages—are set forth in the written testimonies of Dr. DeBona, Dr. Torrente and Nurse Cardona contemporaneously filed with this Court pursuant to LR 39.01(c)(6), which are incorporated by reference.

> *(3)    Ms. Villegas Is Entitled to Compensatory Damages for Future Medical Treatment and Care Necessitated by Metro's Violations of Her Constitutional Rights.*

Dr. DeBona opines that Ms. Villegas suffers from, among other things, chronic PTSD. Chronic PTSD is a illness that requires long term treatment. (DeBona at 30 [Doc. 94-3 at PageID#: 1854.) Dr. DeBona believes that the severity of Ms. Villegas' symptoms can diminish over time, but the symptoms will likely persist throughout her life. (*Id.*) Dr. DeBona recommends that Ms. Villegas undergo intensive treatment for a minimum of five to ten years with medication management. (*Id.*)

Additionally, because the back pain Ms. Villegas suffers resulted from the shackling, Dr. DeBona states that such pain is a trigger and reinforces the PTSD symptoms. (*Id.*) Therefore, she believes it is essential that Ms. Villegas' back pain is adequately assessed and treated. (*Id.*) Finally, Dr. DeBona states that Ms. Villegas needs a general medical evaluation because PTSD is often associated with chronic illness such as diabetes, arthritis, and cardiovascular disease. (*Id.*)

Dr. DeBona's July 25, 2011 Report (a copy of which is attached hereto as <u>Exhibit 1</u>) goes through in detail the future costs of her recommended treatment plan for Ms. Villegas. All of these expenses are necessary in order to properly treat Ms. Villegas for the damages caused by Metro's unconstitutional actions. (DeBona July 25, 2011 Report.) Metro has not offered any alternative treatment plan or disputed the accuracy of the individual costs outlined by Dr. DeBona. (DeBona Aug. 5, 2011 Report [Doc. 142-1].)

More specifically, Exhibit A to Dr. DeBona's July 25, 2011 Report provides the following numbers solely related to future medical costs (reproduced on following page):

## Exhibit A
## Estimated Cost of Medical Care and Treatment

Counseling visits:
    Intensive (2-3 years):                 $31,200 to $62,400 (2hr/week)
    Continuing Afterwards:           $39,000 to $104,000 (1hr/week)

Medications (not including Klonopin and Ambien CR)
    Lexapro:                                $24,180 to $48,360

Psychiatric treatments
    Initial:                                  $5,000 to $7,000    (20 hours)
    Monthly Follow up:                 $18,000 to $48,000  (2hrs/month)

Future follow up care:                     TBD

Marital counseling (1 year):             $7,800 to $10,400 (1hr/week)

Family therapy (2 years):                $15,600 to $20,800 (1hr/week)

**Sub-Total (1):**                           **$140,780 to $300,960**

Potential In-Patient care
    Parthenon Pavilion:                 $8,500 to $11,500 (two visits for 5-7 days each)
    Menninger's Clinic or Sierra Tucson: $45,000 to $60,000 (30 days)
    Longerterm care:                    TBD

**Sub-Total (2):**                           **$53,500 to $71,5000**

Medical care:
    Neurosurgery evaluation:            $2,000
    MRI of spine:                          $785 to $1,346
    Physical therapy:                    $6,000 (6 months)
    Steroid injections:                   $5,000 to $20,000 (1 to 4 times)
    Other:                                   $1,000 to 5,000 (internist, tests and dietician)
    Potential Surgery:                  TBD

**Sub-Total (3):**                           **$14,785 to $34,346**

**GRAND TOTAL:**                      **$209,065 to $406,806**

549197.7   08294-001

13

Case 3:09-cv-00219   Document 162   Filed 08/09/11   Page 13 of 16 PageID #: 3489

*(4) Metro's New Affirmative Defense of Mitigation of Damages*

Metro may not assert a mitigation of damages as a defense at trial. Putting aside the lack of factual support for such a defense, Metro has waived the affirmative defense by failing to plead it. Mitigation of damages is an affirmative defense. *See, e.g., Magical Farms, Inc. v. Land O'Lakes, Inc.*, 356 Fed. Appx. 795, 805 (6th Cir. 2009); *Sapp v. CSX Transp., Inc.*, 2010 U.S. Dist. LEXIS 110230, at *12 (M.D. Tenn. Oct. 12, 2010) (Haynes, J.); *Hailey v. Cunningham*, 654 S.W.2d 392, 396 (Tenn. 1983); *Maness v. Collins*, 2010 Tenn. App. LEXIS 719, at *31 (Tenn. Ct. App. Nov. 17, 2010).

As the Court in *Morgenstern v. County of Nassau*, explained in response to a defendant in a §1983 case seeking to interject a mitigation of damages defense at trial after failing to plead it:

> An "overwhelming majority of federal courts have decided, . . . that failure to mitigate damages is an affirmative defense," and therefore, must be pleaded. *Eassa v. Hartford Fire Ins. Co*., 1991 U.S. Dist. LEXIS 17309 *22 (N.D.N.Y. Nov. 29, 1991); *see also* Fed. R. Civ. 8(c). Moreover, "[t]he general rule in federal courts is that a failure to plead [this] affirmative defense results in a waiver." *Travellers Int'l, A.G. v. Trans World Airlines*., 41 F.3d 1570, 1580 (2d Cir. 1994). In light of this well established rule, the defendants' failure to plead mitigation operates as a waiver of this defense.

2009 U.S. Dist. LEXIS 116602, at *3-4 (E.D.N.Y. Dec. 15, 2009). Similarly, in *Holscher v. Olson*, another § 1983 case, the Court explained that failure to plead mitigation of damages constitutes a waiver that necessitates its exclusion from the case absent agreement from the plaintiff:

> Defendants' answer does not plead "failure to mitigate" as an affirmative defense. (Ct. Rec. 7.) While failure to mitigate damages is not among the affirmative defenses enumerated in Federal Rule of Civil Procedure 8(c), the Ninth Circuit has joined the overwhelming majority of federal courts in concluding that lack of mitigation is a recognized Rule 8 affirmative defense. *999 v. C.I.T. Corp*., 776 F.2d 866, 870 n. 2 (9th Cir. 1985); *Modern Leasing, Inc. of Iowa v. Falcon Mfg. of Cal., Inc*., 888 F.2d 59, 62 (8th Cir. 1989). Failure to plead lack of mitigation of damages as an affirmative defense results in a waiver of that defense and its exclusion from the case. *Modern Leasing*, 888 F.2d at 62; *Frederick v. Kirby*

549197.7 08294-001

14

Case 3:09-cv-00219 Document 162 Filed 08/09/11 Page 14 of 16 PageID #: 3490

> *Tankships, In*c., 205 F.3d 1277, 1286 (11th Cir. 2000), *cert. denied*, 531 U.S. 813, 121 S. Ct. 46, 148 L. Ed. 2d 16 (2000).

2008 U.S. Dist. LEXIS 50057, at *8 (E.D. Wash. June 30, 2008).

Metro never asserted mitigation of damages as a defense in its answer, despite asserting seven other purported affirmative defenses. Throughout the two and half years this matter has been pending, Metro never sought to amend its pleadings to afford Ms. Villegas the opportunity to address any defense of mitigation. Even when afforded the opportunity by Rule to supplement discovery responses 30 days prior to trial, Metro did not do so to assert any defense, much less facts or documents in support of such a defense. Accordingly, Metro has waived any defense of mitigation of damages and may not now argue such to the jury.

## V.     Conclusion

The law is well-established that Ms. Villegas may recover damages for her physical, emotional, mental and psychological damages under § 1983 in proportion to the harm she suffered as a resulted of her shackling during the final stages of her active labor and postpartum recovery and Metro's denial of a breastpump to Ms. Villegas. The expert testimony as well as her own testimony and that of others will illuminate the actual harm suffered as well as the future treatment required with reasonable certainty.

For the reasons set forth above, Plaintiff Villegas requests an appropriate award of damages for the emotional harm and future medical care required due to Defendant's violation of Fourteenth Amendment due process rights and their indifference to her medical treatment. Based on the case law, record proof and expected testimony, an award as high as $1 million or even $5 million plus would be supported.

Respectfully Submitted,

*/s/ John L. Farringer IV*
William L. Harbison (No. 7012)
Phillip F. Cramer (No. 20697)
John L. Farringer IV (No. 22783)
SHERRARD & ROE, PLC
424 Church Street, Suite 2000
Nashville, TN 37219
(615) 742-4200
bharbison@sherrardroe.com
pcramer@sherrardroe.com
jfarringer@sherrardroe.com

Elliott Ozment (No. 4331)
IMMIGRATION LAW OFFICES OF
ELLIOT OZMENT
1214 Murfreesboro Pike
Nashville, TN 37217
(615) 321-8888
elliott@ozmentlaw.com

*Attorneys for Juana Villegas*

## CERTIFICATE OF SERVICE

Service of the foregoing was accomplished through the Court's Electronic Filing System on this 9th day of August, 2011, upon the following:

Kevin Klein
Allison Bussell
Metropolitan Department of Law
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, TN 37219
Kevin.Klein@nashville.gov
Allison.Bussell@nashville.gov

*/s/ John L. Farringer IV*