IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JUANA VILLEGAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-0219 |
| | ) | |
| THE METROPOLITAN GOVERNMENT | ) | Judge Haynes |
| OF DAVIDSON COUNTY/NASHVILLE -- | ) | |
| DAVIDSON COUNTY SHERIFF'S | ) | JURY DEMAND |
| OFFICE, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED INSTRUCTION TO JURY REGARDING
COURT'S PRIOR FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Juana Villegas ("Ms. Villegas") and Defendant the Metropolitan Government of Davidson County—Davidson County Sheriff's Office ("Sheriff's Office" or "Metro") agree that the Court should instruct the jury regarding its prior determination of liability. The parties also agree that this should be read to the jury prior to opening statements. However, they have been unable to agree on the language of the instruction.

On July 18, 2011, Ms. Villegas provided a proposed draft to Metro of the instruction, which was compromised exclusively of quotations from the Court's memorandum opinion. [DE #119] Metro did not respond to the draft until August 4, 2011, when it proposed substantial edits. The next day, counsel for Ms. Villegas responded with a compromise between the two versions on August 5, 2011. Although the parties were able to agree on a bare-bone version of factual stipulations, Metro responded on August 8, 2011, that it would simply submit its own proposed instruction to the Court and suggested that Ms. Villegas do likewise.

Accordingly, Ms. Villegas submits the following proposed instruction to be read by the Court to the jury prior to opening statement. This instruction incorporates both the Court's prior findings of undisputed fact and its conclusions of law. Ms. Villegas believes the instruction is necessary to provide the jury with the facts already found by the Court, particularly because Metro refused to stipulate to them even though they are directly quoted from this Court's memorandum decision, which is the law of the case.

The proposed instruction below includes the bare bone, agreed-upon joint factual stipulations (separately filed jointly by the parties), but also instructs the jury as to the procedural posture of the case and relevant findings of fact by the Court in is Memorandum Opinion. Ms. Villegas submits that providing the jury with the more substantial instruction below will more adequately inform the jury of the facts and posture and will avoid the need for the parties to waste judicial and litigant time submitting evidence of facts that are undisputed as already determined by the Court. Because it incorporates the joint stipulations, the proposed instruction below would obviate any need for the Court separately to read the joint factual stipulations filed separately by the parties. (For the Court's convenience, joint factual stipulations agreed to by Metro are italicized).

**I. Procedural History**

- The parties to this lawsuit are (a) Juana Villegas, who is the plaintiff, and (b) the Metropolitan Government of Nashville and Davidson County and its actions through the Davidson County Sheriff's Office.

- *Certain facts are not in dispute. You are to take these facts as true and may use them in your deliberations during the trial. You will hear further witnesses and argument during the trial.*

- This lawsuit was initiated on March 4, 2009. The parties conducted what is called discovery, consisting of exchanging relevant documents and taking deposition testimony from a number of witnesses, some of whom you will see testify during this trial.

- After the close of discovery, each of the parties filed what is called a motion for summary judgment. These motions identify facts that are not in dispute between the parties, and then asks me, the judge, to decide whether some or all of the issues in the case can be resolved based on the law.

- On April 27, 2011, I issued an Order and Memorandum. You will hear more about my findings in a minute, but I found as a matter of law that Ms. Villegas' constitutional rights under the Fourteenth Amendment were violated by the Sheriff's Office. More specifically, I found that the Sheriff's Office's shackling of Ms. Villegas during the final stages of her labor and subsequent post-partum recovery violated Ms. Villegas' constitutional rights. I also found that the Sheriff's Office's refusal to allow Ms. Villegas to use a breast pump after giving birth violated her constitutional rights.

- Because of my ruling, you will not be asked in this trial to decide whether Ms. Villegas has a valid claim for violation of her constitutional rights. I have already made that decision.

- Rather, this trial will decide solely what injuries and damages, if any, you believe Ms. Villegas suffered as a result of the Sheriff's Office's actions. You will be asked to put a dollar figure on her physical, emotional and psychological damages at the time of the events in question, since that time, and going forward into the future.

## II. Excerpts from the Court's Memorandum [DE 119]

- I am now going to read for you certain portions of my Decision in which I held that the Sheriff's Office violated the constitutional rights of Ms. Villegas. The purpose is to avoid the parties having to reprove these facts to you. But you are to take these facts as true and may use them in your deliberations during the trial. You will hear further witnesses and argument during the trial.

- In my decision, I refer to Ms. Villegas as the "Plaintiff" and I refer to the Sheriff's Office as "DCSO" as an abbreviation of the Davidson County Sheriff's Office.

- "*On July 3, 2008, Tim Coleman, a Berry Hill, Tennessee police officer arrested Plaintiff, Juana Villegas, who was nine months pregnant, for driving without a valid license.*" (Mem. Op. at 3)

- "*DCSO accepts and houses individuals arrested by local law enforcement agencies without inquiry into whether the arrest was proper.*" (*Id.* at 3)

- "*From July 3rd until July 5th 2008, Plaintiff was held in the Davidson County jail. Because July 4th was a holiday, Davidson County courts did not meet that day. On the evening of July 5th, Plaintiff was confined at the Correctional Development Center, a female correctional facility on Harding Place in Nashville.*" (*Id.* at 3)

- "On July 5th, *Plaintiff informed* Richard Ramsey, *a male jail guard that her "water," i.e., amniotic fluid "broke" and "that she was having labor pains*." (*Id.* at 4)

- "Plaintiff told the officer who was at her cell to distribute food "my baby is coming." …[J]ail guards transported Plaintiff to the jail infirmary where a nurse confirmed that Plaintiffs water had broken and summoned an ambulance." (*Id.* at 4)

- "*Plaintiff was placed on a stretcher and transported to Metro General Hospital ("MGH") with her wrists restrained in front of her body and her legs restrained together.* Lt. Kristina Quintal, a jail supervisor sent two male officers to transport Plaintiff.

- In route to the hospital, Matthew Barshaw, a DCSO officer asked Lt. Quintal if Plaintiff needed to be shackled because "what's going through my head now is what if all of a sudden the baby started -- took more time to unrestrain these restraints in the back of the ambulance." Plaintiff testified that she was in pain, from contractions during this time." (*Id.* at 5)

- "*When Plaintiff arrived in her hospital room at MGH, she remained shackled until her transfer to the hospital bed from the ambulance stretcher.*" (*Id.* at 5)

- "*Nurses requested a jail officer to remove Plaintiffs handcuffs to change Plaintiff into a hospital gown.* Plaintiff was unshackled and Barshaw and Farragher, a fellow male officer, remained in Plaintiff's room, but turned their backs to Plaintiff, as the nurses and a doctor requested. A doctor requested that the officers turn their backs while she examined Plaintiff's lower extremities. *Once in her hospital gown, officers Farragher and/or Bradshaw again restrained Plaintiff's hands and legs while she was in the hospital bed.*" (*Id.* at 5)

- "*Brandi Moore, a corporal in DCSO's transportation division, relieved Officers Faragher and Barshaw very shortly after Plaintiff's arrival at MGH.*" (*Id.* at 6)

- "*Moore removed the handcuffs from Plaintiff, but restrained one of Plaintiff's legs to the hospital bed.* According to Moore, she overheard MGH medical staff talking to a doctor about a "No Restraint Order," but the doctor did not respond. A nurse, however, commented that the officers "shouldn't put leg irons on her" and Moore described the nurse as "rude." A nurse described to jail officers the high risk of blood clots after giving birth, if the shackles were not removed. According to Plaintiff's hospital records, at 11:20 p.m. on July 5, 2008, Dr. Kesha Robertson signed a physician's order stating: "Please remove shackles" and this Order was placed in Plaintiff's hospital file. Moore did not see a "No Restraint Order" but the next day Officer Flatt told her of the "No Restraint Order." (*Id.* at 6-7)

- "*David Peralta, another DCSO officer, relieved Moore at 11:00 p.m. on July 5th* and Moore told Peralta to be prepared for a "no restraint order." *Shortly after 11:00 p.m., Peralta removed Plaintiff's restraints. Plaintiff gave birth to her child at approximately 1:00 a.m. on July 6, 2008. Plaintiff remained unrestrained during Peralta's shift, but*

549925.2  08294-001

4

*Peralta shackled Plaintiff just minutes before his shift change at 7:00 a.m.*, because of DCSO policy. *Peralta restrained one of Plaintiff's ankles to the bed after Plaintiff opted for the ankle restraint in lieu of a wrist restraint.*" (*Id.* at 7)

- "When Moore returned on July 6th, Officer Flatt informed her that a No Restraint Order was in effect, but Sergeant Harrison, her supervisor ordered Moore to "put restraints" on Plaintiff." (*Id.* at 7)

- "*During her post-partum recovery, one of Plaintiff's legs was shackled to her hospital bed.* Yet, *whenever Plaintiff went to the restroom or walked or bathed during her post-partum recovery, both of Plaintiff's legs were restrained.*" (*Id.* at 7)

- *The shackling of Ms. Villegas during transport and while in labor and during post-partum recovery in the hospital was done pursuant to the Sheriff's Office's policies.*

- *At the time of Plaintiff's discharge from the hospital, the nursing staff provided a breast pump to Ms. Villegas. Citing its policy, DCSO officials did not allow Plaintiff to take the breast pump with her to the jail.*

- "Without the breast pump, Plaintiff described her pain from the engorgement or swelling of her breasts. Plaintiff testified that she cries repeatedly weekly from this shackling experience surrounding the birth of her child." (*Id.* at 8)

- "Both parties submitted expert medical proof on the risks, effects and injuries attributable to Defendants' shackling of Plaintiff in transport to the hospital, during Plaintiff's stay at the hospital and Defendants' denial of the breast pump provided by MGH staff." (*Id.* at 8)

- "Plaintiff's claim for denial of medical care arises from Defendants' shackling during her active pre-birth labor (when her "water broke") and during her post-partum recovery and is predicated on the Due Process Clause of the Fourteenth Amendment because Plaintiff was a detainee, not a convicted prisoner." (*Id.* at 27-28)

- "The critical part of Plaintiff's claim is Defendants' shackling of her during her final stages of her labor after her amniotic fluid or water broke. Government officials cannot restrain residents except "when and to the extent professional judgment deems this necessary to assure such safety. . . ." [citations omitted]" (*Id.* at 31)

- "As to use of restraints in shackling of a pregnant detainee in labor, [citation omitted] the Eighth Circuit [Court of Appeals in another case] summarized the constitutional history of holdings that since 1994 such restraints were unconstitutional as deliberate indifference to a serious medical condition:

    > **[I]n the District of Columbia … [i]n 1994 that court held that "[w]hile a woman is in labor … shackling is inhumane" and violates her constitutional rights.** [citation omitted] The court held defendant prison officials liable, explaining that a prison official who shackles a woman in

labor acts with "deliberate indifference … since the risk of injury to women prisoners is obvious." [citation omitted]

(Mem. Op. at 31-32 (emphasis in original) (citations omitted))

- "In [another case], pregnant inmate "was shackled to the hospital bed on April 15, 2007 and April 16, 2007" and that Court found that:

    **Common sense**, and the DOC's own policy, **tells us that it is not good practice to shackle women to a hospital bed while they are in labor.**

    \* \* \*

    There is evidence in the record that Plaintiff endured unnecessary pain due to being chained to her bed. … **Dr. Easterling testified that "[t]he ability to move and change positions is integral to a woman trying to cope with pain, and so [Plaintiff's] ability to deal with pain by changing positions is severely impaired."**

    \* \* \*

    Dr. Easterling testified that it is important for women who are in labor to be able to move around to avoid venocaval occlusion, hypertension, and fetal compromise. Defendants offer no evidence to counter this opinion.

    \* \* \*

    **There is no evidence that she posed a flight risk. The evidence shows that on April 15, 2007, when Officers Glasco and Joy took her to the hospital, at a minimum, she was a pregnant woman at or near full term, and was running a fever, was in pain, and was moving slowly.**

    \* \* \*

    **. . . [S]he had a serious medical need and was exposed to an unnecessary risk of harm."**

    (*Id.* at 33-34 (emphasis in original))

- "Here, Plaintiff had no prior criminal history or prior arrest or flight risk and had not been engaged in any conduct to pose a danger to the community or to anyone. While Plaintiff was in labor or post-partum recovery, the medical testimony of Dr. Sandra Torrente and the commendable conduct of Officer Peralta clearly establish the Plaintiff was neither a risk of flight nor a danger to anyone." (*Id.* at 34)

- "The Court applies [the holdings and rationales of these previous cases] . . . and the undisputed facts to conclude that Defendants' shackling of Plaintiff during the final stages of her active labor and her post-partum recovery, violated the Due Process Clause

549925.2 08294-001

6

Case 3:09-cv-00219 Document 165 Filed 08/09/11 Page 6 of 9 PageID #: 3566

of the Fourteenth Amendment, given Plaintiff's serious medical condition and the Defendants' indifference to that condition by shackling her during these time periods." (*Id.* at 34-35)

- "The medical proof demonstrates that such shackling was not medically necessary and caused unnecessary physical and mental suffering." (*Id.* at 35)

- "In addition, [citation omitted], the Court concludes that Defendants' denial of the breast pump that the MGH provided for Plaintiff's medical care also constitutes deliberate indifference under the Eighth and Fourteenth Amendments as the denial and interference with care prescribed by a health care provider." (*Id.* at 35)

- "The Court concludes that the Defendants' shackling of Plaintiff in the final stages of her pregnancy and post-partum recovery as well as the denial of the prescribed breast pump, constitute punishment under the Due Process Clause that is also prohibited [citation omitted]." (*Id.* at 35)

- "Another element of the Eighth Amendment analysis is whether the conduct at issue "violates contemporary standards of decency to expose anyone unwillingly to such a risk." [citation omitted] The Supreme Court and [other courts] cite national health organizations [such as the American Medical Association] in deciding constitutional claims. [citation omitted]. (*Id.* at 37-38)

- "Here, Plaintiff cites a resolution of the American Medical Association ("AMA") that:

    a local jail shall use the least restrictive restraints necessary when the facility has actual or constructive knowledge that an inmate is in the 2nd or 3rd trimester of pregnancy. **No restraints of any kind shall be used on an inmate who is in labor, delivering her baby or recuperating from the delivery unless there are compelling grounds to believe that the inmate presents: (i) An immediate and serious threat of harm to herself, staff or others; or (ii) A substantial flight risk and cannot be reasonably contained by other means."**

    [citation omitted] (*Id.* at 38 (emphasis in original))

- "In addition, on June 12, 2007, the American College of Obstetricians and Gynecologists reported its findings on the interface of institutional concerns and safety of pregnant women in custody. [It explained that] **The practice of shackling an incarcerated woman in labor may not only compromise her health care but is demeaning and unnecessary.** [citation omitted] (*Id.* at 38-39 (emphasis in original))

- "Rule 33 of the United Nations Minimum Standard for the Treatment of Prisoners provides that shackles should not be used on inmates except as a precaution against escape, on medical grounds at the direction of a medical officer, or to prevent an inmate from injury to self or others or from damaging property. [citation omitted.] Amnesty International deems the use of restraints on pregnant prisoners a "cruel, inhuman and

degrading form of treatment in violation of both the UN Convention Against Torture and the International Covenant on Civil and Political Rights." [citation omitted]. The United States is a signatory of the UN Convention Against Torture, and has ratified the International Covenant on Civil and Political Rights." (*Id.* at 39-40)

- "Thus, in addition to the cited judicial decisions, this Court further concludes that these medical publications, convention rules, social studies and standards also establish that the shackling of a pregnant detainee in the final stages of labor shortly before birth and during the post-partum recovery, violates the Eighth Amendment's standard of contemporary decency." (*Id.* at 40)

- "For these collective reasons, the Court concludes that the Plaintiff's motion for partial summary judgment should be granted on her Fourteenth Amendment claim for the Defendants' shackling of her during Plaintiff's active final stages of labor and subsequent postpartum recovery and denial of breast pump." (*Id.* at 42)

### III. Conclusion.

- Just to summarize what I've told you over the last few minutes: I have already found as a matter of law that the Sheriff's Office violated Ms. Villegas' constitutional rights and is liable to Ms. Villegas.

- Your job in this trial is to decide what, if any, damages Ms. Villegas suffered and will suffer, and to put a dollar figure on those damages.

- You should consider the facts I have just summarized for you, as well as the testimony you hear from the witnesses during the trial. Finally, you will also hear opening and closing arguments from the attorneys. The parties will assume you already understand the basic facts and status of this case from what I have just read to you. In the interest of efficiency and respecting your time, we will all attempt not to reprove what you have just heard.

549925.2   08294-001

8
Case 3:09-cv-00219   Document 165   Filed 08/09/11   Page 8 of 9 PageID #: 3568

Respectfully Submitted,

*/s/ John L. Farringer IV*
William L. Harbison (No. 7012)
Phillip F. Cramer (No. 20697)
John L. Farringer IV (No. 22783)
SHERRARD & ROE, PLC
424 Church Street, Suite 2000
Nashville, TN 37219
(615) 742-4200
bharbison@sherrardroe.com
pcramer@sherrardroe.com
jfarringer@sherrardroe.com

Elliott Ozment (No. 4331)
IMMIGRATION LAW OFFICES OF
ELLIOT OZMENT
1214 Murfreesboro Pike
Nashville, TN 37217
(615) 321-8888
elliott@ozmentlaw.com

*Attorneys for Juana Villegas*

## CERTIFICATE OF SERVICE

Service of the foregoing was accomplished through the Court's Electronic Filing System on this 9th day of August, 2011, upon the following:

Kevin Klein
Allison Bussell
Metropolitan Department of Law
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, TN 37219
Kevin.Klein@nashville.gov
Allison.Bussell@nashville.gov

*/s/ John L. Farringer IV*