IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JUANA VILLEGAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:09-cv-219 |
| METROPOLITAN ) | Judge Haynes |
| GOVERNMENT OF DAVIDSON ) | |
| COUNTY/NASHVILLE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY TO
"METROPOLITAN GOVERNMENT'S RESPONSE TO
PLAINTIFF'S MOTION FOR U VISA CERTIFICATION"**

Comes now the Plaintiff Juana Villegas, by and through her undersigned attorney, and would state as follows for her reply to "Metropolitan Government's Response to Plaintiff's Motion for U Visa Certification":

**I. Defendant Metropolitan Government Employs an Erroneous Standard of Proof
As a Basis for Contesting Criminal Allegations Warranting U Visa Certification**

The fatal flaw that runs as an unbroken thread throughout Metropolitan Government's (hereafter, Metro) Response is its use of an erroneous standard of proof in contesting the criminal allegations made by Plaintiff and asserted by Plaintiff as warranting U Visa certification.

**A. Violation of 18 U.S.C. § 242.**

In arguing that no DCSO officer violated this criminal statute, Metro raises three defenses. Metro argues: (1) it didn't have "fair notice" of the unconstitutionality of its conduct; (2) its policies of
1
Case 3:09-cv-00219   Document 204-1   Filed 09/13/11   Page 1 of 8 PageID #: 3811

shackling pregnant women in labor were consistent with other jails across the country; and (3) Ms. Villegas was not in "active" labor at the time of her shackling[1].

For purposes of Plaintiff's motion, the question is not whether Metro officials have any defenses to alleged criminal conduct. It is obvious that Metro has an insatiable itch to present its arguments to a jury, and it may well be that its urge may be satisfied if prosecutors decide to press criminal charges and a jury is empanelled to hear the case. All of this, however, is far too premature and unnecessary for this Court to decide in order to grant Plaintiff's motion. In *Garcia v. Audubon Communities Management*, 2008 U.S. Dist. LEXIS 31221 (E.D. La. April 15, 2008), the defendants there similarly argued that they were not the perpetrators of any of the alleged qualifying criminal activity alleged by the plaintiffs[2]. Chief U.S. District Court Judge Berrigan examined only the Complaint and exhibits (including affidavits attached to the motions for U Visa certifications) and found:

> . . . that the Plaintiffs have made a <u>prima facie</u> showing that they have been the victim of qualifying criminal activity, that they possess information concerning the qualifying criminal activity, and that they are likely to be helpful to an investigation or prosecution of that qualifying criminal activity.
> [Emphasis supplied.]

2008 U.S. Dist. LEXIS 31221 at 7.

In a footnote to the phrase "prima facie", Judge Berrigan included two definitions from Black's Law Dictionary:

> "Prima Facie" has two (2) definitions in Black's Law Dictionary: 1. "Sufficient to establish a fact or raise a presumption unless disproved or rebutted." 2. As an adjective, "at first sight; on first appearance but subject to further evidence or information." Both definitions apply in this matter.

---

[1] In fact, technical and laborious quibbles about "active labor" vs. "latent labor" occupy a major portion of Metro's Response, although there is no dispute that DCSO itself thought Ms. Villegas was in sufficient labor to warrant calling an ambulance to transport her from the jail to the hospital for the delivery of her child. See Officer Barshaw's Deposition at Doc. 86-1 at 18-19.

[2] The defendants in *Garcia* argued that they were not the perpetrators of any crime because outside contractors were responsible for hiring and firing the plaintiffs.

The same standard should be used to decide Plaintiff Villegas' instant motion. The Court cannot and should not decide whether the proof establishes "beyond a reasonable doubt" that DCSO employees committed this or other crimes or whether countervailing facts or defenses may or may not be applicable. Plaintiff has submitted sufficient — and ample — evidence to raise the presumption and establish at first sight or appearance that crimes have been committed, but it is, of course, subject to being disproved or rebutted in the proper forum. This is all that's necessary for this Court to issue a U Visa certification.

To push the point even further, the Court noted "that on-going criminal investigation may not be necessary to certify a U-Visa application because the regulations contemplate the future helpfulness of the applicant(s)" and cites 72 Fed. Reg. 53019 as proof of that proposition. 2008 U.S. Dist. LEXIS 31221 at 9-10.

This Court does not even have to decide at this point that DCSO officers actually committed crimes or determine which entity or entities committed crimes. In response to the *Audobon Management* defendants' argument that a U Visa should not be certified because the plaintiffs' allegations pertain to "the conduct of third parties", Judge Berrigan characterized the contention as "unconvincing". She carefully pointed out:

> The regulations state that applicants for U-Visa certification must be victims of qualifying crimes. The regulations do not mandate that a specific entity be the alleged perpetrator of the qualifying crimes. Consequently, at this point in the proceedings, the Plaintiffs have made a prima facie showing that they are entitled to U-Visa certification.

2008 U.S. Dist. LEXIS 31221 at 12.

Metro's attempts to relitigate the merits of this lawsuit, as well as its attempts to litigate a criminal case that has not even been filed yet, are premature and out of place. Plaintiff's motion does not seek any finding of fact from this Court — all references to the facts of this case are couched in the language of a *prima facie* showing.

**B. Plaintiff's Arguments Relative to Illegal Criminal Restraint, Felonious Assault, and Torture Should Not Be Rejected.**

First Metro misapprehends Plaintiff's references to kidnapping and false imprisonment. One pertinent "qualifying criminal activity", as spelled out in 8 USC § 1101(a)(15)(U)(iii), is "illegal criminal restraint". Plaintiff submits that the manner of shackling Ms. Villegas during labor (both in the ambulance and the hospital), in combination with the defiance of numerous medical requests and orders (both oral and written) to release the shackles[3], constitutes such depraved conduct that there can be no dispute that Ms. Villegas was subjected to "illegal criminal restraint". The crimes of "false imprisonment" and "kidnapping" are simply state statutes that contain the same elements as those that comprise the federal concept of "illegal criminal restraint". The fact that Ms. Villegas was already in custody when shackles were applied to her during labor does not detract from the illegality of the restraint being challenged here.

Metro's arguments about whether Ms. Villegas was subjected to "substantial risk of bodily injury" are also misplaced. To be eligible for U visa relief, an alien must have "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" enumerated by the Act. See 8 USC § 1101(a)(15)(U)(iii)(1). To determine whether suffered abuse is substantial, a number of factors may be considered, including:

> The nature of the injury inflicted or suffered, the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim. . . . A series of acts taken together may be considered substantial physical or mental abuse even where no single act alone rises to that level.

---

[3] Metro's strained defense of whether there were "orders" directing the release of the shackles flies in the face of the numerous requests of the medical personnel who were present, according to the testimony of DCSO's own officers: Officer Barshaw's deposition at Doc. 86-1 at pp. 1-40, Officer Moore's deposition at Doc. 86-5 at pp. 44-50 and Doc. 86-6 at pp. 1-17, Officer Peralta's deposition at Doc. 86-6 at pp. 18-31, and Officer's Ray's deposition at Doc. 86-6 at pp. 12-34. See Doc. 86, Plaintiff's Statement of Undisputed Facts 7, 8, 11, 14, 17, 20, 22, 23, 24, 25, 26, 28, 29, 35, 36, 38, 43, and 49. Aside from the status of any written order in this case, at a minimum, this collective testimony establishes a *prima facie* case that orders were issued and intentionally disobeyed.

8 C.F.R. § 214.14(b). Ultimately eligibility for U visa relief must be made on "case-by-case determinations, using [these] factors as guidelines. . . Through these factors, USCIS will be able to evaluate the kind and degree of harm suffered by the individual applicant, based upon the individual applicant's experience." 72 FR 53018. Not only has Plaintiff submitted extensive medical evidence, both in depositions and court testimony, through lay and expert medical evidence, of her injuries, but a jury has awarded her $200,000. To contend at this point that Plaintiff has not demonstrated at least a *prima facie* case of "physical or mental abuse" flies in the face of abundant evidence to the contrary.

Metro's discussion of Ms. Villegas' ICE detainer and consequent classification as a "medium security inmate" is totally without foundation. The decision of whether to place a "hold" on Ms. Villegas was not made by the Federal Government.[4] The I-247 Immigration Detainer Form is sometimes used by DCSO in its 287(g) program to place an "immigration hold" or "ICE hold" on individuals determined to be undocumented, regardless of the offense for which they were arrested. In its operation, a DCSO officer — not an ICE officer — initiates the preparation of an I-247 and signs it. The form is then forwarded to an ICE supervisor, who may or may not counter-sign the document. Exhibit A attached to this Reply shows the signature of a "DCSO 287(g) Deputy" on an I-247 Detainer without any signature of an ICE supervisor. Absolutely no independent and particularized assessment of security risk has ever been given to any ICE detainee, including Ms. Villegas. As the Court held, there was no empirical evidence demonstrating that Ms. Villegas was a security risk. To maintain that a 9-month pregnant

---

[4] Inexplicably, Metro never introduced the I-247 Detainer for Ms. Villegas, despite the fact that if it existed, it should have been in her "jail file", which was under the exclusive control of the DCSO. Moreover, it was never produced by Metro in its Initial Disclosures or Supplemental Disclosures to Plaintiff. In its Statement of Undisputed Facts (Doc. Entry 78) at ¶ 10, Metro stated, "ICE placed a federal detainer on Ms. Villegas". In her Response at Doc. Entry 93 at ¶ 10, Plaintiff disputed this allegation. Metro never filed the I-247 in support of its Undisputed Statement ¶ 10; instead, Metro's only cited source to support this "fact" was ¶25 of the Complaint, which merely states: "Upon information and belief, ICE placed or authorized and permitted to be placed a federal detainer against Ms. Villegas." Therefore, Plaintiff is attaching as Exhibit A to this Reply a "specimen" I-247 actually used by DCSO (but in reference to a detainee other than Ms. Villegas, whose pertinent information is redacted) for illustrative purposes only.

woman, whose water has broken and who is in labor (whether active or latent), is a security risk requiring shackling to prevent escape is without any statistical proof whatsoever.

## II. Conclusion

Plaintiff agrees with numerous points in Metro's Response. First, Metro was correct to "take no position on whether this Court should provide a certification for Ms. Villegas' U Visa application". Second, the issues of whether a federal judge has jurisdiction to certify a U Visa[5], or whether a U Visa can be issued in civil litigation[6] are not germane to Metro.

This means that whether Plaintiff's Motion is granted or denied is in the total discretion of the Court. If the Motion is granted, Metro cannot appeal since it has not opposed the Motion itself; moreover, the USCIS will make the final decision on whether to approve the application and issue the visa — not the Court. If the Court denies the Motion, the Plaintiff cannot and will not appeal since the decision is totally within the discretion of the Court.

Plaintiff urges the Court to grant the Motion and issue the certification of the U-Visa if it determines that it is a fair and just action to help make Ms. Villegas whole.

Respectfully submitted,

/s/ Elliott Ozment

Elliott Ozment, Attorney at Law
Immigration Law Offices of Elliott Ozment
1214 Murfreesboro Pike
Nashville, TN 37217
(615) 321-8888 (O)
(615) 321-5230 (F)
Email: elliott@ozmentlaw.com

---

[5] Of course, Judge Berringer in *Garcia* stated: "It is undisputed that a federal judge is qualified to "certify" U-Visa applications. 8 USC § 1101(a)(15)(U)(i)(III); 8 C.F.R. § 214.14(a)(3)(ii)." 2008 U.S. Dist. LEXIS 31221 at 6.

[6] This, of course, is beyond dispute since *Garcia v. Audubon Communities Management* was a civil case in which Judge Berringer issued U-Visa certifications.

William L. Harbison (No. 7012)
Phillip F. Cramer (No. 20697)
John L. Farringer IV (No. 22783)
SHERRARD & ROE, PLC
424 Church Street, Suite 2000
Nashville, TN 37219
(615) 742-4200
bharbison@sherrardroe.com
pcramer@sherrardroe.com
jfarringer@sherrardroe.com

Attorneys for Juana Villegas

## CERTIFICATE OF SERVICE

Service of the foregoing was accomplished through the Court's Electronic Filing System on this 13th day of September, 2011, upon all those to receive notice in the Court's ECF system, including the United States and the following:

Kevin Klein
Allison Bussell
Metropolitan Department of Law
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, TN 37219
Kevin.Klein@nashville.gov
Allison.Bussell@nashville.gov

*/s/ Elliott Ozment*

8