UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JUANA VILLEGAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-00219 |
| | ) | Chief Judge Haynes |
| | ) | |
| METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE AND DAVIDSON | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

# M E M O R A N D U M

Plaintiff, Juana Villegas, filed this action under 42 U.S.C. § 1983 against the Defendants:

Metropolitan Government of Nashville Davidson County, Tennessee ("Metro"); Nashville Davidson

County Sheriff's Office ("DCSO"); Janet Napolitano, in her official capacity as Secretary of

Department of Homeland Security; and John Doe #1, John Doe # 2, John Doe # 3 and John Doe #

4. Plaintiff's claims were: that the Defendants' conduct violated her rights under the Due Process

Clause of the Fourteenth Amendment for their deliberate indifference to Plaintiff's serious medical

needs arising from Defendants' shackling of Plaintiff during the final stages of her labor during her

pregnancy and post-partum recovery in DCSO's custody, and that Defendants violated her First

Amendment right to familial association and her Fourth Amendment right of personal privacy.

Plaintiff also asserted claims that DCSO breached its contract with the Immigration and Customs

Enforcement ("ICE") on Metro's detention of her and Defendants' conduct violated the Tennessee

Constitution, Article 1, Section 8 and Section 32. The claims against the John Doe Defendants were

nonsuited, and the Court dismissed Plaintiff's claims against the Secretary. Given that DCSO, the responsible entity was not a person under § 1983 and Metro was a named Defendant, the Court dismissed DCSO.

After discovery and cross motions for summary judgment, the Court granted Plaintiff's motion for partial summary judgment on her Fourteenth Amendment claims for the Defendant Metro's shackling of her during Plaintiff's active final stages of labor and subsequent postpartum recovery and the denial of a breast pump, but dismissed without prejudice, Plaintiff's claims for breach of contract and Plaintiff's state law claims. Plaintiff's claims on damages proceeded to trial before a jury and on August 18, 2011, the jury awarded Plaintiff two hundred thousand dollars ($200,000) on her federal constitutional claims against Defendant Metro.

Before the Court is the Plaintiff's motion for U Visa certification (Docket Entry No. 198), requesting the Court to exercise its discretion to provide judicial certification towards Plaintiff's U Visa application pursuant to 8 U.S.C. § 1101(a)(15)(U). Plaintiff asserts that judicial certification would allow Plaintiff to apply to the United States Customs and Immigration Services ("USCIS") for U Visa relief that, if granted by the USCIS, would permit Plaintiff to remain in the United States to complete presentation of claims, involving state or federal crimes, under the Trafficking Victims Protection Act ("TVPA").

In response (Docket Entry No. 200), Defendant states that it does not take a position as to whether the Court should certify Plaintiff's U Visa application and asserts that whether the Court "should inject itself into the realm of U Visa applications in civil litigation, whether the Court has jurisdiction to do so," and whether Plaintiff should be allowed to remain in the United States, are not germane to Defendant's defense of Plaintiff's Section 1983 claims. Id. at 1. Defendant, however,

2

disputes Plaintiff's allegations of criminal conduct by DCSO officers and argues that the officers did not have "fair warning" of the purported constitutional violations, that DCSO's policy of shackling pregnant women in labor were consistent with other jails across the country and Plaintiff was not in "active" labor at the time of her shackling. Defendant also argues that Plaintiff was lawfully restrained and that DCSO officers did not violate a "No Restraint Order."

In reply (Docket Entry No. 206), Plaintiff argues that the issue is not whether the proof establishes beyond a reasonable doubt that officers committed certain crimes or whether countervailing facts or defenses may or may not be applicable, but rather whether at this stage Plaintiff has made a prima facie showing that crimes were committed. Plaintiff argues that Defendant's defenses are subject to being disproved or rebutted in a trial forum and are not relevant at this stage.

In October 2000, Congress created the U nonimmigrant classification in the Battered Immigrant Women Protection Act of 2000. Victims of Trafficking and Violence Protection Act of 2000, div. B, Violence Against Women Act of 2000, tit. V, Battered Immigrant Women Protection Act of 2000, Pub. L. 106-386, sec. 1513, 114 Stat. 1464, 1533-37 (2000). In drafting this legislation Congress made the following findings:

> (A) Immigrant women and children are often targeted to be victims of crimes committed against them in the United States, including rape, torture, kidnaping, trafficking, incest, domestic violence, sexual assault, female genital mutilation, forced prostitution, involuntary servitude, being held hostage or being criminally restrained.

> (B) All women and children who are victims of these crimes committed against them in the United States must be able to report these crimes to law enforcement and fully participate in the investigation of the crimes committed against them and the prosecution of the perpetrators of such crimes.

3

Id., sec. 1513(a)(1)(A), (B).

As to the remedial purposes of this legislation, Congress stated:

(A) The purpose of this section is to create a new nonimmigrant visa classification that will strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes described in section 101(a)(15)(U)(iii) of the Immigration and Nationality Act committed against aliens, while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States. This visa will encourage law enforcement officials to better serve immigrant crime victims and to prosecute crimes committed against aliens.

(B) Creating a new nonimmigrant visa classification will facilitate the reporting of crimes to law enforcement officials by trafficked, exploited, victimized, and abused aliens who are not in lawful immigration status. It also gives law enforcement officials a means to regularize the status of cooperating individuals during investigations or prosecutions. Providing temporary legal status to aliens who have been severely victimized by criminal activity also comports with the humanitarian interests of the United States.

Id., sec. 1513(a)(2)(A), (B).

Under 8 U.S.C. § 1101(a)(15)(U), a non-citizen is eligible for a U Visa if the Secretary of

Homeland Security determines that:

(I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);

(II) the alien . . . possesses information concerning criminal activity described in clause (iii);

(III) the alien . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and

(IV) the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States . . . .

8 U.S.C. § 1101(a)(15)(U)(i)(I)-(IV).

4

Clause (iii) provides:

the criminal activity referred to in this clause is that involving one or more of the following or any similar activity in violation of Federal, State, or local criminal law: rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes[.]

8 U.S.C.A. § 1101(a)(15)(U)(iii).

Under 8 U.S.C. § 1184(p)(1), the petition filed by the non-citizen under § 1101(a)(15)(U)(i) must "contain a certification from a Federal, State, or local law enforcement official, prosecutor, judge, or other Federal, State, or local authority investigating criminal activity described in section 1101(a)(15)(U)(iii)." Id. The certification must "state that the alien 'has been helpful, is being helpful, or is likely to be helpful' in the investigation or prosecution of criminal activity described in section 1101(a)(15)(U)(iii)." Id.

Federal judges are qualified to "certify" U-Visa applications. "Certifying official means– [a] Federal, State, or local judge." 8 C.F.R. § 214.14(3)(ii). See also Garcia v. Audubon Communities Management, LLC, No. 08-1291, 2008 WL 1774584, at *2 (E.D. La. April 15, 2008) (examining the complaint and exhibits attached to the U Visa certification the court recognized its authority to grant a motion for U Visa certification in an FLSA action where at that point in the proceedings plaintiffs had made prima facie showing of qualifying criminal activity) (citing 8 U.S.C. § 1101(a)(15)(U)(i)(III); 8 C.F.R. § 214.14(a)(3)(ii)); 72 Fed.Reg. 53014, 53020 (Recognizing that "[j]udges neither investigate crimes nor prosecute perpetrators," the USCIS states "that the term 'investigation or prosecution' should be interpreted broadly.").

5

Plaintiff contends that she was a victim of illegal acts that constitute "qualifying criminal activity" under 8 U.S.C.A. § 1101(a)(15)(U)(iii). Specifically, Plaintiff asserts that she was a victim of the following potential crimes or similar activity: (1) conspiracy against the free exercise or enjoyment of constitutional rights in violation of 18 U.S.C. § 241; (2) deprivation of constitutional rights under color of law in violation of 18 U.S.C. § 242; (3) false imprisonment in violation of Tenn. Code Ann. § 39-13-302; (4) kidnapping in violation of Tenn. Code Ann. § 39-13-303; (5) felonious assault in violation of Tenn. Code Ann. § 39-13-102(a); and (6) torture in violation of 18 U.S.C. § 2340A. Plaintiff sent letters containing a list of these alleged charges of criminal activity to the United States Department of Justice Civil Rights Division, the Federal Bureau of Investigation, the United States Attorney for the Middle District of Tennessee, and the District Attorney General of the 20th Judicial District of the State of Tennessee (Davidson County). See Docket Entry No. 198, Exhibit B.

As to Plaintiff's reliance on Title 18 U.S.C. § 242, that statute provides, in relevant part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be [punished as provided by law].

18 U.S.C. § 242.

This Court previously determined that the Defendants' shackling of Plaintiff during the final stages of active labor and her post-partum recovery, as well as denial of a breast pump, violated her Fourteenth Amendment rights, given Plaintiff's serious medical condition. In addition, acting pursuant to DCSO's policy implemented by Sheriff Daron Hall, Metro's Rule 30(b)(6)

6

representative, Defendants exhibited deliberate indifference to that condition. (Docket Entry No. 119-1, Memorandum at 34-35). The DCSO officials also "intentionally interfer[ed] with the treatment once prescribed" by physicians. Id. at 30 (quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976)). The Court concluded that the shackling caused unnecessary physical and mental suffering and was contrary to clearly a established right and published national medical standards as well as the laws and policies of twenty other states and the federal government. Id. at 35.[1] The Court also noted that given Plaintiff's lack of criminal history and her arrest for a minor traffic offense, Plaintiff did not appear to qualify as an alien who "pose[s] a threat to communities" under the standard governing the 287(g) program to justify her confinement at DCSO. Id. at 34 n.8.

As to whether Plaintiff "suffered substantial physical or mental abuse," the regulations concerning "substantial physical or mental abuse" state:

> The alien has suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity. Whether abuse is substantial is based on a number of factors, including but not limited to: The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim, including aggravation of pre-existing conditions. No single factor is a prerequisite to establish that the abuse suffered was substantial. Also, the existence

---

[1]This Court cited that "[s]ince 2000, twenty one states as well as federal law enforcement and prison agencies have concluded that shackling of a pregnant woman shortly before delivery and post-partum recovery does not promote any penological interest." (Docket Entry No. 119-1, Memorandum at 39). Moreover, Metro relied on the opinions of a Vanderbilt University Medical School professor on the lack of risk to Plaintiff. In the Court's view, this opinion on the constitutional question could not trump the decisions of two circuits on strikingly similar facts as well as the opinions of the American Medical Association and the American College of Obstetricians and Gynecologists and United States treaties. (Docket Entry No. 119-1, Memorandum at 31-40). Metro also relied on correctional experts on the penological justifications for DCSO's treatment of Plaintiff when such justifications, as a matter of law, apply to convicted prisoners, not a pretrial detainee charged with a minor traffic offense and without any criminal history or violence. Id. at 28 n. 6

7

> of one or more of the factors automatically does not create a presumption that the abuse suffered was substantial. A series of acts taken together may be considered to constitute substantial physical or mental abuse even where no single act alone rises to that level.

8 C.F.R. § 214.14(b)(1). Moreover, the regulations state, "[p]hysical or mental abuse means injury or harm to the victim's physical person, or harm to or impairment of the emotional or psychological soundness of the victim." 8 C.F.R. § 214.14(a)(8). Here, Plaintiff established a sufficient showing of such SERIOUS harm that the jury awarded Plaintiff $200,000 in damages.

Based upon the record and the Court's earlier findings, the Court concludes that Plaintiff has made a prima facie showing that she was a victim of the qualifying potential criminal activity, namely deliberate indifference to the a deprivation of constitutional rights under color of law that could violate 18 U.S.C. § 242. See Garcia, 2008 WL 1774584, at *2 n.4 ("'Prima Facie' has two (2) definitions in Black's Law Dictionary: 1. 'Sufficient to establish a fact or raise a presumption unless disproved or rebutted.' 2. As an adjective, 'at first sight; on first appearance but subject to further evidence or information.' Both definitions apply in this matter."). As the victim to the alleged criminal activity, Plaintiff clearly possesses information concerning potential criminal activity.

Finally, Plaintiff has contacted various federal and state law enforcement authorities regarding the alleged criminal activity and supplied them with the Court's findings. Thus, Plaintiff has established that she "has been helpful, is being helpful, or is likely to be helpful" under 8 U.S.C. § 1101(a)(15)(U)(i)(III). See Garcia, 2008 WL 1774584, at *3 ("[T]he Court notes that on-going criminal investigation may not be necessary to certify a U-Visa application because the regulations

8

contemplate the future helpfulness of the applicant.") (citing 72 Fed.Reg. 53019);[2] 8 C.F.R. § 214.14(a)(12) ("U nonimmigrant status certification means Form I–918, Supplement B, "U Nonimmigrant Status Certification," which confirms that the petitioner has been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim.").

As to Plaintiff's claim under 18 U.S.C. § 241, "[i]f two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to [her] by the Constitution or laws of the United States, or because of her having so exercised the same . . . [shall be punished as provided by law]." 18 U.S.C. § 241. To prove the crime of conspiracy to violate civil rights under § 241, "'the government must prove that [defendants] knowingly agreed with another person to injure [the victim] in the exercise of a right guaranteed under the Constitution.'" United States v. Lanham, 617 F.3d 873, 885 (6th Cir. 2010) (quoting United States v. Epley, 52 F.3d 571, 575–76 (6th Cir.1995)). "The government also must prove beyond a reasonable doubt that there was specific intent to commit the deprivation." Id.

---

[2] 72 Fed.Reg. 53014, 53019 states:

USCIS interprets 'helpful' to mean assisting law enforcement authorities in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim ... The requirement was written with several verb tenses, recognizing that an alien may apply for U nonimmigrant status at different stages of the investigation or prosecution. By allowing an individual to petition for U nonimmigrant status upon a showing that he or she may be helpful at some point in the future, USCIS believes that Congress intended for individuals to be eligible for U nonimmigrant status at the very early stages of an investigation. This suggests an ongoing responsibility to cooperate with the certifying official while in U nonimmigrant status.

9

For the same reasons, the Court concludes that Plaintiff has made a prima facie showing that she was a victim of the qualifying potential criminal activity, namely DCSO officials acting pursuant to DCSO policy, to subject Plaintiff to shackling and to deny Plaintiff a breast pump, in violation of 18 U.S.C. § 241.

Plaintiff also asserts the crimes of false imprisonment in violation of Tenn. Code Ann. § 39-13-302, kidnapping in violation of Tenn. Code Ann. § 39-13-303 and felonious assault in violation of Tenn. Code Ann. § 39-13-102(a) as "qualifying criminal activity" under 8 U.S.C.A. § 1101(a)(15)(U)(iii). The statute of limitations for aggravated assault[3] and kidnapping[4] is four years and for false imprisonment[5] is one year. Here, the incident giving rise to Plaintiff's claims occurred on or around July 5-6, 2008. (Docket Entry No. 119-1, Memorandum at 4-8).

In Torres-Tristan v. Holder, 656 F.3d 653 (7th Cir. 2011), the Seventh Circuit noted its difficulty in seeing how the granting of the petitioner's U Visa petition could serve the purposes of the program because "[e]ven if [the petitioner] could provide information that would actually be useful in investigating and prosecuting the . . . crime, the statute of limitations had expired several years earlier." Id. at 657 n.4. There has not been anything submitted into the record to reflect the prosecution of such charges. Therefore, the Court concludes that the certification of these crimes would not serve the purposes of the U Visa program because the prosecution of such criminal activity for false imprisonment, kidnapping and felonious assault would be barred by the applicable statute of limitations.

---

[3] See Tenn. Code Ann. § 39-13-102(e)(1) and § 40-2-101(b)(3).

[4] See Tenn. Code Ann. § 39-13-303 and § 40-2-101(b)(3).

[5] See Tenn. Code Ann. § 39-13-302(b) and § 40-2-102(a).

10

Accordingly, the Court concludes that Plaintiff's request for judicial certification for the crimes of false imprisonment, kidnapping and felonious assault as "qualifying criminal activity" should be denied.

Plaintiff further asserts that she was a victim of the crime of torture under 18 U.S.C. §§ 2340, 2340A, warranting U Visa certification. Section 2340A provides:

> (a) Offense.--Whoever outside the United States commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years, or both, and if death results to any person from conduct prohibited by this subsection, shall be punished by death or imprisoned for any term of years or for life.

> (b) Jurisdiction.--There is jurisdiction over the activity prohibited in subsection (a) if--
> > (1) the alleged offender is a national of the United States; or
> > (2) the alleged offender is present in the United States, irrespective of the nationality of the victim or alleged offender.

18 U.S.C. § 2340A. Section 2340 defines "torture" and "severe mental pain or suffering" as follows:

> (1) "torture" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;

> (2) "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from--

> (A) the intentional infliction or threatened infliction of severe physical pain or suffering; [or]

> . . .

> (D) the threat that another person will imminently be subjected to death, severe physical pain or suffering . . . or other procedures calculated to disrupt profoundly the senses or personality . . . .

18 U.S.C. § 2340.

11

Plaintiff's reliance on 18 U.S.C. §§ 2340, 2340A, however, is misplaced. "The United States

. . . enacted 18 U.S.C. §§ 2340 and 2340A to fulfill its obligations under Articles 4 and 5 [of the

United Nations Convention Against Torture]. Yet, those sections criminalize torture **outside** the

United States; they do not provide civil redress for torture within the United States." Renkel v.

United States, 456 F.3d 640, 644-45 (6th Cir. 2006) (footnote omitted) (emphasis added); Felder v.

Howerton, 240 F.App'x 404, 406 (11th Cir. 2007) ("[Plaintiff] . . . fails to direct this court to any

persuasive or binding precedential authority for disregarding the plain language of the statute, which

assigns *criminal* liability to persons who commit or conspire to commit torture 'outside the United

States.'") (emphasis in original). Thus, because 18 U.S.C. §§ 2340 and 2340A only apply to

criminal conduct outside the United States Plaintiff would be unable to provide information that

would actually be useful in investigating and prosecuting these alleged crimes.

Accordingly, the Court concludes that Plaintiff's request for judicial certification for the

crime of torture should be denied.

In reaching its conclusion, the Court is not affirmatively concluding that the acts in the record

constitute crimes, but is merely concluding for these purposes that Plaintiff met her minimum burden

of showing that she is entitled to U Visa certification. The USCIS has final discretion as to whether

Plaintiff has met the requirements for U-1 nonimmigrant status. Torres-Tristan, 656 F.3d at 656 n.3;

Mondragon v. United States, 839 F. Supp.2d 827, 829 (W.D.N.C. 2012); 8 C.F.R. § 214.14(c)(1)

("USCIS has sole jurisdiction over all petitions for U nonimmigrant status.").

Accordingly, for these reasons, the Court concludes that Plaintiff's motion for U Visa

certification (Docket Entry No. 198) should be granted.

An appropriate Order is filed herewith.

12

**ENTERED** this the 20<sup>t</sup> day of September, 2012.

_____
WILLIAM J. HAYNES, JR.
Chief United States District Judge

Case 3:09-cv-00219   Document 244   Filed 09/20/12   Page 13 of 13 PageID #: 4701